**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-279 (RCL)** |
| **v.** | : | **Case No. 23-cr-294 (RCL)** |
| | : | |
| **KEVIN CLARDY and** | : | |
| **THOMAS RIDDLE,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendants Clardy and Riddle to 90 day's incarceration and one year of supervised release each. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution for each defendant.

**I.      Introduction**

Half-brothers Kevin Clardy, a 46-year-old driver for a medical company, and Thomas Riddle, a 40-year-old full-time service technician, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol Building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

Clardy and Riddle (1) entered the Capitol Building as part of the initial breach of the Senate Fire door; (2) aided other rioters in breaking down an office door; (3) entered the secured office; (4) entered the Capitol Building three times (in seven minutes); (5) celebrated and took pride in their actions, using celebratory gestures and photographing themselves posing in the secured office;  and (6) posted photos from January 6 on social media. Riddle posted comments on social media bragging about his and Clardy's involvement in the chaos, destruction, and violence of that day.  Clardy and Riddle each pleaded guilty to violating 18 U.S.C. § 1752(a)(2) (Disorderly Conduct in Restricted Area).

The Court must also consider that the defendants' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Clardy's and Riddle's crimes support a sentence of 90 day's incarceration (a recommendation at the midpoint of the advisory Guidelines' range of zero - six months), one year of supervised release, 60 hours of community service, and $500 in restitution.

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.      Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* 23-cr-279 (RCL), ECF No. 23 (Riddle Statement of Offense), ¶¶1-7; 23-cr-294 (RCL), ECF No. 22 (Clardy Statement of Offense), ¶¶1-7.

*Defendants Clardy and Riddle's Roles in the January 6, 2021 Attack on the Capitol*

Clardy and Riddle traveled together to DC on January 6, 2021 to attend a rally at the Capitol. While there, they were captured on closed-circuit television ("CCTV") and publicly accessible videos in Washington D.C. and inside the U.S. Capitol Building at the time of the certification proceedings on January 6, 2021.



Image 1 (Clardy circled in red and Riddle circled in yellow)

Clardy and Riddle entered the U.S. Capitol Building at approximately 2:42 p.m. on January 6th through the Senate Fire door, also known as the Senate Parliamentarian door.  See

3

Image 2. (Images 2 through 12 consist of screenshots of CCTV footage from cameras inside of the Capitol Building.)



Image 2 (Clardy and Riddle entering the Senate Fire door at approximately 2:42:48 p.m., pixilation issues in CCTV original)

CCTV footage shows that the Senate Fire door had been breached by rioters merely seconds before Clardy and Riddle entered through that door.



Image 3 (Other rioters initially breaching the Senate Fire door at approximately 2:42:23 p.m.)

Clardy and Riddle remained inside the doorway for the Senate Fire door for almost a minute before exiting the building through the same door at 2:43:38 p.m. See Image 4.



Image 4

Clardy and Riddle then entered the building a second time, again through the Senate Fire door, at approximately 2:44:28 p.m.  See Image 5. Clardy made a triumphant gesture as the two reentered.



Image 5

Approximately 24 seconds later, they assisted a crowd attempting to break a door leading to office S131 by pushing the group that was pushing against the door.  See Image 6.  Damage to the door consisted of splintered and damaged wood, costing approximately $9,860 to repair per the Architect of the Capitol.



Image 6 (Clardy and Riddle pushing into and attempting to break the office S131 door)

They both entered that office with the crowd and exited the office through the same door almost one minute late later at 2:45:02 p.m. See Image 7.



Image 7 (Clardy and Riddle exiting office S131 at approximately 2:45:02 p.m.)

Clardy and Riddle lingered in front of the office for approximately 46 seconds before leaving the building again at approximately 2:45 p.m. They then entered the building for a third time approximately a minute later, again through the Senate Fire door, and reentered office S131. See Images 8 and 9.



Image 8



Image 9

They remained in office S131 for approximately one minute, exiting at 2:47:56 p.m.

They then again lingered in front of office S131, taking photos, until departing out the Senate

Fire door at approximately 2:49 p.m.  See Images 10, 11 and 12.



Image 10 (Clardy and Riddle taking photos in front of office S131)



Image 11 (Clardy and Riddle walking towards the Senate Fire door to exit)



Image 12 (Clardy and Riddle exiting the Capitol Building for the third time through the Senate Fire door)

*Social Media*

Law enforcement obtained Facebook and Google records, pursuant to search warrant, for both Riddle and Clardy. Facebook records revealed photos depicting scenes from the Capitol, including those taken inside the building, such as photos of what appears to be the interior of office S131.  See Images 13 and 14.



Image 13 (Clardy posing for a photo inside office S131)



Image 14 (Riddle posing for a photo inside office S131)

On January 8, 2021, Riddle posted photos of the riot with the comments "RIP Ashley Babbitt! Thank you for your service! Your death will not be in Vain!" and posted comments in the days after January 6 stating, "it was crazy trying to not get arrested. That was wild as hell. Best party I've ever been to" and "They now know we can take the capital if we want it bad enough." He also had images of VP Pence with "Traitor" written on it.  Clardy did not have any social media of note.

*Clardy's and Riddle's FBI Interviews*

In May of 2022, Clardy and Riddle spoke with law enforcement prior to their arrest in this matter.  During their interviews, Riddle and Clardy admitted that they traveled in Riddle's truck to Washington D.C. and visited some monuments before attending a rally at the Washington monument. They then walked to the U.S. Capitol and were near an exterior door

11

when another person forced entry inside. They went into the building and aided others in forcing another door open. Inside that room, they took pictures then left the building. They then left Washington D.C.

*The Charges and Plea Agreement*

On June 20, 2023, the United States charged Riddle and Clardy in a complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2), 40 U.S.C. §§ 5104(e)(2)(D) and (G), and 18 U.S.C. § 1361. On September 14 and 18, 2023, Riddle and Clardy, respectively, pleaded guilty, pursuant to plea agreements, to a one-count Information, charging them with a violation of 18 U.S.C. § 1752(a)(2) (Disorderly Conduct in Restricted Area). By plea agreement, Riddle and Clardy each agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Riddle and Clardy now each face sentencing for violating 18 U.S.C. § 1752(a)(2). As noted by the plea agreements and the U.S. Probation Office, the defendants face up to one year of imprisonment and a fine of up to $100,000 each. The defendants must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

## IV.    The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual

sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The agreed-upon Sentencing Guidelines calculation in Clardy and Riddle's plea agreements is different than that set forth in the PSR. The parties agreed to the following Guidelines calculation in their plea agreements:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a))[2] | +4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | +2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Total Adjusted Offense Level | 4 |

---

2 Pursuant to U.S.S.G. § 1B1.2 and Appendix A, if more than one Guidelines provision may apply to a particular offense, a court should "use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." Appendix A provides two Guidelines options for a violation of 18 U.S.C. § 1752: U.S.S.G. § 2A2.4 (obstructing or impeding officers) or U.S.S.G. § 2B2.3 (trespass). Because the government agreed in the plea agreement that U.S.S.G. § 2B2.3 is the applicable Guideline here, we do not object to its use in this case. Upon review of the applicable law and principles, however, the government has concluded that U.S.S.G. § 2A2.4 is the appropriate Guideline for a violation of 18 U.S.C. § 1752(a)(2). *See United States v. Eicher*, 22-cr-38 (BAH), Sentencing Tr., p. 24 (disagreeing with Judge Friedman's opinion in Broadnax and applying U.S.S.G. § 2A2.4 to Eicher's 18 U.S.C. § 1752(a)(2) conviction, explaining that "Disrupting the orderly conduct of a government business may very well stop a government official from doing his or her job, and that clearly qualifies as obstructing or impeding officers; the title of the guideline at Section 2A2.4… [H]ere defendant joined a violent mob; it overran law enforcement, whose official duties were tasked with protecting the Capitol… [a]nd her disorderly and disruptive conduct as part of these throngs of hundreds of angry people thus impeded both law enforcement officers and members of Congress and the Vice President from doing their official duties on January 6, 2021, even if she did not directly assault, personally harm or issue threats of credible harm against law enforcement in the process."); *United States v. Vargas Santos*, 21-cr-47 (RDM), Sentencing Tr., p. 22 (applying U.S.S.G. § 2A2.4 to Vargas Santos's 18 U.S.C. § 1752(a)(2) conviction, explaining that "2A2.4 encompasses the impeding of an officer or obstructive behavior in a way that is more consistent with 1752(a)(2)… [I]t seems evident that the sentencing commission believed that some violations under 1752 will appropriately be treated under the trespass guideline, while others would be better treated under the obstructing or impeding officer's guideline… Everyone agrees that 1752(a)(1) should be treated under the trespass guideline… But [1752(a)(2)] does require an obstructing or impeding of government business, and government business is typically carried out by government officers and government officials."). *But see United States v. Broadnax*, 21-cr-350 (PLF), Sentencing Tr., p. 94 ("I conclude that the appropriate guideline for a violation of 1752(a)(2) is 2B2.3, trespass… [T]here is no evidence that Mr. Brodnax impeded or obstructed any governmental official.").

*See* ECF No. 21 at 2-3 (Clardy, 23-cr-294) and ECF No. 22 at 2-3 (Riddle, 23-cr-279).  The PSRs agreed with the application of the base level, specific offense characteristic, and adjustment for acceptance of responsibility above.[3]  See ECF No. 24 at ¶¶ 25-26, 32 (Clardy, 23-cr-294) and ECF No. 24 at 24-25, 31 (Riddle, 23-cr-279).  However, the PSRs also applied a two-level downward adjustment under U.S.S.G. § 4C1.1 for "Zero-Point Offender[s]," and accordingly, calculated Clardy and Riddle's total adjusted offense levels as 2 instead of 4.  See PSRs at ¶¶ 31 and 33 (Clardy) and ¶¶ 32 and 33 (Riddle).  However, the Government disagrees with the application of the § 4C1.1 adjustment in the instant case.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. § 4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria.  The Court should not apply § 4C1.1 here for the reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when

---

[3]  The PSRs incorrectly stated that the specific offense characteristic under U.S.S.G. §2B2.3(b)(1)(A) applied because the trespass occurred "at a secure government facility" under U.S.S.G. §2B2.3(b)(1)(A)(i). PSRs ¶ at 26 (Clardy) and ¶ 25 (Riddle). As indicated in the defendants' plea agreements, the specific offense characteristic applies because the trespass occurred "at any restricted building or grounds," under U.S.S.G. §2B2.3(b)(1)(A)(vii). ECF No. 21 at 2 (Clardy) and ECF No. 22 at 2 (Riddle). On January 6, 2021, the U.S. Capitol was restricted because protectees of the United States Secret Service were visiting. *See* 18 U.S.C. § 1752(c)(1)(B). Because a two-level increase applies under either theory, there is no difference to the final offense level based on how U.S.S.G. §2B2.3(b)(1)(A) is applied.

all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). In the instant case, the defendants' presence and conduct – including being part of an initial breach of the Senate Fire door and their efforts to break down the door of an office on the Senate side of the Capitol Building – also in part caused the continued interruption to Congressional proceedings.

Moreover, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack.

Due to the unique nature of the January 6 mob, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless vary upwards by two levels to counter any reduction in offense level. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

Finally, to avoid unnecessary litigation, if the court declines to apply § 4C1.1, the government requests that the Court make clear at sentencing that it would have imposed the same sentence regardless of whether § 4C1.1 applies.[4] Additionally, the U.S. Probation Office calculated both Clardy and Riddle's criminal histories as category I.  PSRs at ¶ 45 (Clardy) and ¶ 36 (Riddle). Accordingly, based on the PSRs' asserted total adjusted offense levels of 2 and the category I criminal history, the PSRs list both Clardy and Riddle's corresponding Guidelines imprisonment range as zero to six months.  PSRs at ¶ 70 (Clardy) and ¶ 60 (Riddle).  The Guidelines range as calculated based on Clardy and Riddle's plea agreements (using the total adjusted offense level of 4), is also zero to six months of imprisonment.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

## V.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the

---

[4] U.S.S.G. § 5C1.1 has also been amended with a new application note providing that if a defendant receives an offense level reduction under §4C1.1 and either their applicable guideline range is in Zone A or B of the Sentencing Table, or the guideline range overstates the seriousness of the offense, imprisonment may not be appropriate. *See* U.S.S.G. § 5C1.1, comment. n. 10. The government submits that for the same reasons that § 4C1.1 should not be applied in this case, a sentence of imprisonment is appropriate notwithstanding Application Note 10 to § 5C1.1.

Section 3553(a) factors weigh in favor of 90 day's incarceration, one year of supervised release, 60 hours of community service, and $500 in restitution for each defendant.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Riddle's and Clardy's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like Riddle and Clardy, the absence of violent acts is not a mitigating factor. Had Riddle and Clardy engaged in such conduct, they would have faced additional criminal charges.

One of the most important factors in Riddle's and Clardy's case is defendants' contribution to breaking a door open at the U.S. Capitol Building to access a secured room.  Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 90 day's incarceration and one year of supervised release in this matter.

### B.  Riddle and Clardy's Histories and Characteristics

As set forth in their PSRs, Riddle's and Clardy's criminal histories both fall within Category I based on zero criminal history points.  However, that does not mean they have led law-abiding lives.  Both had prior convictions. Clardy had 10 adult convictions including domestic violence and grand larceny. Riddle had one drug possession conviction which included carrying a weapon and which also resulted in probation violations.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol Building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

18

*Specific Deterrence*

The need for Clardy and Riddle's sentences to provide specific deterrence to these two defendants also weighs heavily in favor of incarceration.  While Clardy and Riddle have accepted responsibility by pleading guilty, their actions inside the U.S. Capitol and Riddle's comments after January 6are concerning and indicate a lack of remorse for their conduct.  Chaos, violence, and destruction were readily apparent inside the Capitol Building while Defendants wandered around. Yet, they directly contributed to this chaos and destruction by aiding others in breaking down a door and entering a secured office. Also, while inside the building, they took pride in their actions, making celebratory hand gestures and photographing themselves casually seated and posing in the secured office. They could have left at any time instead chose to enter the Capitol Building three times, contributing to this chaos.  After the riot, Clardy and Riddle also posted photos from January 6 (including photos taken inside the office) in the days after the riot, and Riddle posted comments on social media showing a complete lack of remorse (e.g., "Best party I've ever been to" and "They now know we can take the capital [sic] if we want it bad enough").  Clardy and Riddle's casual attitude and lack of remorse indicate that a sentence of incarceration is needed to impress upon defendants the seriousness of their crimes.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[5] This

---

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Court must sentence Clardy and Riddle based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

Riddle and Clardy have each pleaded guilty to Count One of their Information, charging them with violating 18 U.S.C. § 1752(a)(2). This offense is a Class A misdemeanor. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Daniel Leyden*, 21-cr-314 (TNM), Sent. Hr. Tr. at 38 ("I think the government rightly points out generally the best way to avoid unwarranted sentencing disparities is to follow the guidelines.") (statement of Judge McFadden). If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because

it does not consider the context of the mob violence that took place on January 6th of 2021.")
(statement of Judge Pan).

Although all the other defendants discussed below participated in the Capitol breach on
January 6, 2021, many salient differences explain the differing recommendations and sentences.
While no previously sentenced case contains the same balance of aggravating and mitigating
factors present here, the sentences in the following cases provide suitable comparisons to the
relevant sentencing considerations in this case.

While no previously sentenced case contains the same balance of aggravating and
mitigating factors present here, other judges of this court have sentenced Capitol breach defendants
who entered the U.S Capitol Building and entered sensitive spaces or attempted to damage
property to similar time requested by the government.

In United States v. Isaiah Farnsworth, 23-cr-00004, defendant Farnsworth pleaded guilty
to 18 U.S.C. § 1361 (Destruction of Government Property).[6]  Similar to Clardy and Riddle,
Farnsworth (1) was one of the first rioters who entered the U.S. Capitol through the breached
Senate Fire door/Parliamentarian door; (2) joined several other rioters in efforts to break the locked
door of office S-131; (3) rammed the door with so much force that he and the other rioters caused
over $9,000 in damages; (4) his actions allowed rioters to enter and ransack a private office; and
(5) rather than express remorse, Farnsworth posted videos on Facebook that glorified his actions
on January 6.  Judge Mehta sentenced Farnsworth to 3 months' incarceration.[7]

---

[6] Although Clardy and Riddle pled guilty to 18 U.S.C. § 1752(a)(2), their original complaint also
charged 18 U.S.C. § 1361.  See 23-cr-294, ECF No. 1 (Clardy and Riddle Complaint).

[7] Distinct from Clardy and Riddle, the Guidelines range (2-8 months' imprisonment) and
Government recommendation (7 months' imprisonment) in that case were both higher because
Farnsworth also had a significant criminal history—13 adult criminal convictions, including a
felony conviction in 2000 for sexually assaulting a child, and two convictions for domestic

In <u>United States v. Kelly O'Brien</u>, 21CR-633, defendant O'Brien pled guilty to a single Class A misdemeanor, 18 U.S.C. § 1751(a)(1) (Entering and Remaining in a Restricted Building). Similar to Clardy and Riddle, O'Brien went to a sensitive space within the Capitol Building (penetrating the U.S. Capitol all the way to the Speaker's office suite).  Also, similar to Riddle, O'Brien made Facebook posts following the riot showing a total lack of remorse.  Distinct from the instant case, however, O'Brien was not part of the initial breach of the Senate Fire door, but she, unlike Clardy and Riddle, destroyed evidence from her Facebook account in an attempt to evade law enforcement detection. de This Court sentenced O'Brien to 90 days' incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

---

violence in 2018.  Here, in light of the lesser criminal history in the instant case, the Government recommends a 3-month sentence.

VI.     **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[8] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Clardy and Riddle must pay $500 in restitution each, which reflects in part the roles Clardy and Riddle played in the riot on January 6.[9] Plea Agreements at ¶ 12 (Clardy) and ¶ 12 (Riddle). As the plea agreements reflect, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted

---

[8] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[9] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Clardy and Riddle's restitution payments must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 12.

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Riddle and Clardy to 90 day's incarceration, one year of supervised release, 60 hours of community service, and $500 in restitution each.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Clardy and Riddle's liberty as a consequence of their behavior, while recognizing their acceptance of responsibility for their crimes.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     s/ *Joseph Huynh*
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270